LEON EISEN JR. *v.* BLACK & WHITE CAB CO. ET AL

5-4580                                                    428 S. W. 2d 56

Opinion delivered May 27, 1968

*Hardin, Barton, Hardin & Jesson* and *H. Clay Robinson,* for appellant.

*Warner, Warner, Ragon & Smith,* for appellees.

LYLE BROWN, Justice. The Workmen's Compensation Commission denied appellant Eisen's claim for benefits and on appeal to the circuit court the Commission was affirmed. The claim was rejected on the grounds that (1) Eisen was not an employee of appellee Black & White Cab Company, and (2), assuming the employer-employee relationship existed, Eisen was not within the scope of employment at the time of his injury.

On the night of October 11, 1965, Eisen was operating a taxicab. After discharging his passenger at a motel he was flagged by a motorist whose car was stalled because of battery trouble. Eisen had a set of

"jumper cables" in the cab. While Eisen was in the process of connecting the cables from his battery to the faulty battery a third car came on the scene and struck the disabled vehicle. The impact caused severe injuries to Eisen's left leg. That leg was eventually amputated because of gangrene.

Only two witnesses testified as to the recited issues. Leon Eisen, Jr. testified in his own behalf. Bob Staton, a managing executive and one of the owners of Black & White, testified for the respondents, Black & White and the insurance carrier. The activity of Eisen at the time of his injury is not disputed. As to the employer-employee relationship, Eisen testified that he was employed by the owners of Black & White; that he was operating a company car; that they directed him in his work; that on one occasion they suspended him because of a misunderstanding over money; and that Mr. Staton promulgated rules concerning the operation of the cabs. Staton's testimony was very substantially in conflict with that of Eisen. The Compensation Commission accepted the testimony of Staton as establishing the true relationship between the parties.

*Commission's Findings Summarized.* There are twenty-three Black & White cabs operating in Fort Smith. None are actually owned by respondent. Property rights to the cabs fall in three classifications: first, those owned outright by individual operators; second, those purchased by an operator under a conditional sales contract financed through Black & White; and third, those purchased under a conditional sales contract and financed by a finance company of the cab operator's choice. Black & White has an arrangement with the various cab owners whereby legal title to all the vehicles is registered in the name of Black & White irrespective of the equity of the individual cab owner. Such registration makes it possible for Black & White to obtain the required liability insurance on all cabs, for which the Company pays the premiums;

Claimant Eisen owned no equity in the cab he was driving. That vehicle was actually owned by Frank Braswell, who operated it on the day shift. Braswell was buying the car under a conditional sales contract. Eisen operated it at night. For the purposes already described, the legal title was in Black & White. Claimant's arrangement to drive the car was made with Frank Braswell. Black & White advertises for drivers and when an applicant reports he is referred to a particular owner who needs a relief driver;

Black & White furnishes services to the drivers. The cabs are equipped with two-way radios. When a call is received by the radio dispatcher he contacts the cab nearest the point where a cab is desired. It is optional with each driver whether he accepts or rejects a call; if he rejects it the dispatcher calls another cab. Work periods are not prescribed by the Company. The actual owner is free to use his vehicle for family and other personal uses. Black & White maintains a mechanical department but the cab owners are not required to utilize those services. Gas, oil, and repairs are the responsibility of the owner-operators;

At the end of his shift Eisen would leave $9.50 at the Company's office. Of that amount one-half would be retained by the Company as its charge and the balance would be credited to Braswell. The Company did not withhold any type of tax. On his income tax return Eisen represented he was self-employed;

No accounting of fares is made to the Company by the owner of the vehicle or his relief driver. Neither does the relief driver so account to the owner for whom he drives.

So much for the Commission's findings. It was further of the opinion that Eisen's activities at the time of his injury were outside the scope of his cab operations. We do not reach that point because we sustain

the Commission on its finding that an employer-employee relationship did not exist between claimant and Black & White.

Appellant concedes the facts in this case are substantially similar to the facts in *Rose* v. *Black & White Cab Co.,* 222 Ark. 210, 258 S. W. 2d 50 (1953). Both cases involve the same company and the plan under which they operated in 1953 is remarkably similar to their present operation. However, appellant here contends there is an important distinction in the fact situations in one respect. It is asserted that in *Rose* the legal title to the involved vehicle was not vested in Black & White, whereas the opposite is true in the case at bar. The fact that Black & White held the legal title to the vehicle was of course a proper element for consideration. On the other hand, the Commission found the Company's explanation for its holding the legal title to be plausible. Black & White was doing business under a franchise from the city; the law requires that all cabs be covered by liability insurance; and the franchise could have been jeopardized by a failure to so comply. Further, in the event of an accident, liability could possibly be fixed against Black & White. The surest way for the Company to know that the insurance was in force at all times was for Black & White to carry it.

Certainly there was evidence here, as in *Rose,* "from which the inference might be drawn that the cab company was in fact an employer." It was a disputed question of fact. The finding of the Commission was to the contrary and we cannot say there was no substantial evidence to support that conclusion. It carries the same weight as a jury finding on a controverted issue.

Affirmed.